**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**ZUHDIJA TRICIC,**

                **Plaintiff,**

**v.**                                              **6:07-CV-9997 (NAM/GHL)**

**MICHAEL J. ASTRUE,**

                **Defendant.**
_____

**APPEARANCES:**                                  **OF COUNSEL:**

Office of Peter W. Antonowicz                  Peter W. Antonowicz, Esq.
148 West Dominick Street
Rome, NY 13440

Social Security Administration                     Sommattie Ramrup,
Office of Regional General Counsel             Special Assistant U.S. Attorney
Region II
26 Federal Plaza - Room 3904
New York, NY 10278

**Hon. Norman A. Mordue, Chief U.S. District Judge**

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

      Plaintiff Zuhdija Tricic brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act seeking review of the Commissioner of Social Security's decision to deny his application for a period of disability and disability insurance benefits ("DIB").

**II.    BACKGROUND**

      On March 17, 2005, plaintiff filed an application for Social Security disability benefits

alleging disability onset on February 16, 2004. Plaintiff was forty-four at the time he applied for disability benefits. Plaintiff was born in Bosnia and emigrated to the United States in 1998. Plaintiff was employed by a furniture manufacturer as a forklift driver from May 1999 to February 1994. In Bosnia, plaintiff was employed as a construction worker. Plaintiff claims that he became disabled "as a result of significant limitations caused by a variety of medical conditions including discogenic and degenerative low back disorders, L5-S1 disc protrusion contacting the anterior and thecal sac, facet hypertrophy at the L5-S1 level with narrowing of the L5-S1 nuero foramen bilaterally, lumbosacral discopathy with radiculitis, S1 radiculopathy, depression, anxiety, and somatoform disorder."

Plaintiff's application was denied on July 21, 2005 and he requested a hearing before an administrative law judge ("ALJ"). On May 30, 2007, a hearing was held and plaintiff attended with a paralegal from his attorney's office and a Bosnian interpreter. On June 28, 2007, the ALJ issued a decision denying plaintiff's application for benefits. On September 10, 2007, the Appeals Council denied plaintiff's request for review making the ALJ's decision the Commissioner's final determination. This action followed.

## III. DISCUSSION

The Social Security Act (the "Act") authorizes payment of disability insurance benefits to individuals with "disabilities." The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). There is a five-step analysis for evaluating disability claims:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do." The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (internal citations omitted).

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw*, 221 F.3d at 131. Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

In this case the ALJ found at step one that plaintiff has not engaged in substantial gainful activity since the alleged onset date of his disability. (T. 16). At step two, the ALJ concluded that plaintiff suffered from "lumbosacral spine strain/sprain and a somatiform [sic] disorder" which qualified as severe impairments within the meaning of the Social Security Regulations (the "Regulations"). (T. 16). At the third step of the analysis, the ALJ determined that plaintiff's impairments did not meet or equal the severity of any impairment listed in Appendix 1 of the Regulations. (T. 16). The ALJ found that plaintiff had the residual functional capacity ("RFC") "to lift/carry 20 pounds occasionally and 10 pounds frequently, sit for 6 hours in an 8 hour

3

workday, stand/walk for 6 hours in an 8 hour workday, cannot engage in sustained or continuous bending or stooping, and can crouch, kneel, crawl, stoop and climb stairs occasionally." (T. 19). At this step, the ALJ found that plaintiff "failed to satisfy his burden of establishing that he has any significant mental limitations." (T. 19). At step four, the ALJ concluded that plaintiff "is unable to perform any past relevant work". (T. 22). At the final step, relying on the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, the ALJ concluded that "considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform". (T. 23). The ALJ therefore found that plaintiff was not under a disability as defined by the Social Security Act. (T. 24).

In seeking federal judicial review of the Commissioner's determination, plaintiff argues that: (1) the ALJ's residual functional capacity decision is not supported by substantial evidence; (2) the ALJ failed "to properly consider the effects of the plaintiff's mental impairments" and should have utilized a vocational expert; and (3) the ALJ improperly evaluated plaintiff's complaints of disabling pain.

**A.      Residual Functional Capacity**

Plaintiff argues that the ALJ's determination that he has the residual functional capacity to perform light work is not supported by substantial evidence. Specifically, plaintiff asserts that the ALJ failed in her duty to obtain a specific functional assessment of plaintiff's limitations from his treating physicians. The Commissioner argues that the ALJ's RFC determination is supported by substantial evidence.

Residual functional capacity is:

4

> "what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims ("SSR 96-8p"), 1996 WL 374184, at *2 (S.S.A. July 2, 1996)).  In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis.  20 C.F.R. § 404.1545(a).

Here, the ALJ found that plaintiff had the residual functional capacity ("RFC") "for the full range of light work" (T. 24),[1] and could "lift/carry 20 pounds occasionally and 10 pounds frequently, sit for 6 hours in an 8 hour workday, stand/walk for 6 hours in an 8 hour workday, cannot engage in sustained or continuous bending or stooping, and can crouch, kneel, crawl,

---

[1]According to the regulations:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b) and 414.967(b).

stoop and climb stairs occasionally." (T. 19). The ALJ does not, however, identify the medical evidence on which she relied in reaching the determination that plaintiff could perform light work. The ALJ states only that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" as well as "opinion evidence in accordance with" the Regulations. (T. 19). Further, having reviewed the record, the Court concludes that the ALJ's specific findings are not supported by substantial evidence. Indeed, how the ALJ arrived at these findings cannot be ascertained from a review of the medical evidence because there are no opinions by any physician regarding plaintiff's functional limitations in the record.

For example, the ALJ found that plaintiff could "lift/carry 20 pounds occasionally and 10 pounds frequently." (T. 19). Although medical consultant "A. Christian" opined that plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, (T. 275), the only physician to offer a specific opinion on the amount of weight plaintiff could lift was Dr. Daniel Carr, an orthopedic surgeon, who stated that "[a] 50 pound weight restriction would be appropriate." (T. 142). Dr. Roger Norton, one of plaintiff's treating physicians, stated that plaintiff should not engage in repetitive lifting but offered no specific opinion on the amount plaintiff could lift. (T. 475). Dr. Pierre Herard, another of plaintiff's treating physicians stated that plaintiff was "limited in his ability to lift" but did not opine as to the amount. (T. 237). Thus, there is no medical evidence in the record which would support the finding by the medical consultant or the ALJ regarding the amount of weight plaintiff could lift and carry.

The ALJ found that plaintiff could sit for 6 hours in an 8 hour workday and "stand/walk" for 6 hours in an 8 hour workday. (T. 19). The medical consultant stated that plaintiff could sit

6

"about 6 hours in an 8 hour workday" and stand or walk "at least 2 hours in an 8 hour workday". (T. 275). Dr. Norton opined that plaintiff should avoid "prolonged sitting and standing" (T. 475) and Dr. Herard stated that plaintiff was limited in his ability to "sit for [sic] long time". (T. 237). Since there is no specific finding in the record by a physician regarding plaintiff's ability to sit and stand or walk, the ALJ's finding in this regard is not supported by substantial evidence.

The ALJ found that plaintiff "cannot engage in sustained or continuous bending or stooping". (T. 19). Plaintiff takes no issue with this finding, which is supported by the record. (T. 475, 237, 142).

The ALJ found plaintiff can "crouch, kneel, crawl, stoop and climb stairs occasionally." T. 19. Although the medical consultant opined that plaintiff could perform these activities occasionally, T. 276, the record contains no evidence from a physician regarding plaintiff's ability to perform these activities. Dr. Gerald Coniglio and Dr. Jose Lopez, both of whom performed independent medical examinations, found plaintiff had no work restrictions (T. 261-67, 118-22), and no other physician found any of these limitations specifically. Thus, it is unclear from the record, how the ALJ made this determination. As a result, this aspect of the ALJ's decision is not supported by substantial evidence.

For the above reasons, the Court finds that the ALJ's RFC determination is not supported by substantial evidence. Additionally, as the ALJ acknowledged, "[n]one of the claimant's treating physicians have completed a detailed function by function assessment of the claimant's work abilities." (T. 22). Indeed, the record contains no functional assessment by any physician - treating, examining, or consultative. Although the record contains a functional assessment by a medical consultant, it is not, for the reasons discussed above, supported by the weight of the

7

evidence. *See Coffie v. Comm'r of Soc. Sec.*, 2009 WL 2045618, at *7 (N.D.N.Y. 2009) (reliance on non-examining State agency medical consultants, who are deemed to be qualified experts in the field of social security disability, is appropriate when the opinions are supported by the weight of the evidence) (citing 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2)).  As a result, it does not provide an adequate basis for an RFC determination.

Since Social Security proceedings are non-adversarial in nature, the ALJ has a "'duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits.'" *Butts v. Barnhart,* 388 F.3d 377, 386 (2d Cir. 2004) (quoting *Seavey v. Barnhart*, 276 F.3d 1, 8 (1st Cir. 2001)).  The ALJ is under this obligation even when the claimant is represented by counsel. *See Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) ("[T]he ALJ [must] affirmatively develop the record ... even when, as here, the claimant is represented by counsel.") (quotations and citations omitted)).

In this case, there is no indication in the record that the ALJ attempted to contact any of plaintiff's treating physicians and request that they render an assessment of plaintiff's RFC.  In view of the absence of any functional assessment in the record by a physician, the Court finds that the ALJ failed to develop the record.  Accordingly, on remand, before making a residual functional capacity determination, the ALJ should attempt to obtain functional assessments from plaintiff's treating physicians.

**B.     Mental Impairment** - **Vocational Expert**

Plaintiff argues that the ALJ failed to consider the effects of his mental impairment on his residual functional capacity to work and that the testimony of a vocational expert was required.

8

At the fifth step of the sequential evaluation of disability, the Commissioner bears the responsibility of proving that plaintiff is capable of performing other jobs existing in significant numbers in the national economy in light of plaintiff's residual functional capacity, age, education, and past relevant work. 20 C.F.R. §§ 416.920, 416.960. Ordinarily, the Commissioner meets his burden at this step "by resorting to the applicable medical vocational guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1986)." *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986). Sole reliance on the grids is inappropriate where the guidelines fail to describe the full extent of a claimant's limitations. *Id*. at 606. For example, use of the grids as the exclusive framework for making a disability determination may be precluded where plaintiff's physical limitations are combined with non-exertional impairments which further limit the range of work she can perform. *Pratts*, 94 F.3d at 39. In these circumstances, the Commissioner must "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." *Bapp*, 802 F.2d at 603; *see also Melchior v. Apfel*, 15 F. Supp. 2d 215, 222 (N.D.N.Y. 1998) (stating "where nonexertional limitations significantly diminish the ability to perform a full range of work, it is appropriate that the ALJ present testimony from a vocational expert").

The Second Circuit has held that "the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert or preclude reliance" on the grids.[2]

---

[2] A "nonexertional limitation" is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only the claimant's ability to meet the demands of jobs other than the strength demands. 20 C.F.R. §§ 404.1569a(c), 416.969a(c). Examples of nonexertional limitations are nervousness, inability to concentrate, difficulties with sight or vision, and an inability to tolerate dust or fumes. 20 C.F.R. §§ 404.1569a(a), (c)(i), (ii), (iv), (v), 416.969a(a), (c)(i), (ii), (iv), (v); *see also Rodriguez v. Apfel*, 1998 WL 150981, at *10, n. 12 (S.D.N.Y. 1998).

*Bapp*, 802 F.2d at 605.  The testimony of a vocational expert that jobs exist in the economy which claimant can obtain and perform is required only when "a claimant's nonexertional impairments significantly diminish his ability to work-over and above any incapacity caused solely from exertional limitations-so that he is unable to perform the full range of employment indicated by the medical vocational guidelines."  *Id.*, at 605-06.  The use of the phrase "significantly diminish" means the "additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity".  *Id.*, at 606.  Under these circumstances, to satisfy his burden at step five, the Commissioner must "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform."  *Rosa*, 168 F.3d at 78 (quoting *Bapp,* 802 F.2d at 604).   Therefore, when considering nonexertional impairments, the ALJ must first consider the question - whether the range of work the plaintiff could perform was so significantly diminished as to require the introduction of vocational testimony.  *Samuels v. Barnhart*, 2003 WL 21108321, at *12 (S.D.N.Y. 2003) (holding that the regulations require an ALJ to consider the combined effect of a plaintiff's mental and physical limitations on his work capacity before using the grids).

In this case, the ALJ found that plaintiff, who has been diagnosed with a somatoform disorder, anxiety, and depression, had no mental limitations that would impact his residual functional capacity to perform light work.  Specifically, the ALJ concluded that plaintiff "has no restriction of activities of daily living, mild difficulties maintaining social functioning, moderate deficiencies of concentration, persistence or pace and has had one episode of decompensation of short duration."  (T. 18).  Having found no mental limitations or other nonexertional impairments

that would impact plaintiff's RFC, the ALJ relied on the medical vocational guidelines to reach a determination that plaintiff was not disabled. The Court finds, however, that there is evidence in the record that plaintiff suffers additional mental limitations that would diminish the range of work plaintiff could perform and that would, consequently, need to be addressed through the testimony of a vocational expert before a disability determination could be reached.

Plaintiff's treating psychiatrist, Dr. Dushan Kosovich, opined that plaintiff's attention was short and his concentration was poor. (T. 339). Regarding plaintiff's memory, Dr. Kosovich stated that plaintiff was "forgetful for recent events". (T. 339). Dr. Kosovich opined that plaintiff's insight and judgment were "poor". (T. 339). Dr. Kosovich stated that plaintiff's understanding and memory were limited because he was "preoccupied about his sickness and future." (T. 340). Dr. Kosovich described plaintiff's "sustained concentration and persistence were "limited" because he "poorly concentrated". (T. 340). Dr. Kosovich stated that plaintiff's "social interaction" was "limited" because he is "seclusive". (T. 340). Dr. Kosovich opined that plaintiff's ability to adapt and respond appropriately in changes in the work setting was "limited" because he was "self conscious". (T. 341).

Abdul Hameed, M.D. performed a psychiatric review and opined that plaintiff was not significantly limited" with regard to "understanding and memory" or "social interaction". (T. 293-94). Dr. Hameed opined that plaintiff had "mild" "difficulties in maintaining social functioning", "moderate" "difficulties in maintaining concentration, persistence or pace", and was "moderately limited" in the ability to adapt and "respond appropriately to changes in the work setting". (T. 280-95).

11

Here, the ALJ acknowledged several aspects of the limitations addressed by Drs. Kosovich and Hameed, including "mild difficulties maintaining social functioning, moderate deficiencies of concentration, persistence or pace and has had one episode of decompensation of short duration." (T. 18). The ALJ, however, made no reference to Dr. Kosovich's statement that plaintiff's insight and judgment were poor and that his understanding and memory were impacted by his mental condition. Further, both Dr. Kosovich and Dr. Hameed opined that plaintiff's ability to adapt and respond to changes in the work setting was limited - or moderately limited, but the ALJ made no mention of these opinions. Accordingly, remand is required for reconsideration of the opinions of Drs. Kosovich and Hameed regarding plaintiff's mental limitations and whether they impact plaintiff's residual functional capacity. Utilization of a vocational expert to aid in the determination of whether there are jobs plaintiff can perform despite his mental limitations may be necessary.

### C.     Credibility

Plaintiff argues that the ALJ failed to evaluate his complaints of disabling pain properly because the ALJ did not account for the effect of his somatoform disorder on his perception of pain when considering the issue of credibility. When the evidence demonstrates a medically determinable impairment, "subjective pain may serve as the basis for establishing disability, even if such pain is unaccompanied by positive clinical findings or other 'objective' medical evidence[.]" *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption." *Casino-Ortiz v. Astrue*, 2007 WL 2745704, at *11, n. 21 (S.D.N.Y. 2007) (citing 20

12

C.F.R. § 404.1529(c)(2)) . If plaintiff's testimony concerning the intensity, persistence or functional limitations associated with his pain is not fully supported by clinical evidence, the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi). The issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of his neck and back pain are consistent with the objective medical and other evidence. *See* Social Security Ruling 96-7p, 1996 WL 374186, at *2.

The ALJ retains discretion to assess the credibility of a claimant's testimony regarding disabling pain and "to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Marcus*, 615 F.2d at 27; *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999) (holding that an ALJ is in a better position to decide credibility). When rejecting subjective complaints of pain, an ALJ must do so "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief[.]" *Brandon v. Bowen*, 666 F. Supp 604, 608 (S.D.N.Y. 1987). If the Commissioner's findings are supported by substantial evidence, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." *Aponte v. Secretary, Dept. of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984). A reviewing court's role is merely

to determine whether substantial evidence supports the ALJ's decision to discount a claimant's subjective complaints. *Aponte*, 728 F.2d at 591 (quotations and other citations omitted).

In this case, the ALJ found plaintiff's subjective complaints of pain to be "partially credible." (T. 20). Plaintiff's principal argument is that the ALJ failed to consider his somatoform disorder when addressing the issue of credibility. The Court agrees. Nowhere in the discussion of the credibility of plaintiff's complaints of disabling pain is there any reference to plaintiff's somatoform disorder, which the ALJ found, at step two, to be severe. Although "'[a] somatoform disorder does not insulate a claimant from an ALJ's credibility finding," *Bell v. Astrue*, 2010 WL 271429 (N.D. Ohio, Jan. 15, 2010) (quoting *Gentry v. Shalala*, 9 F.3d 112 (Table), 1993 WL 438622 at *1 (7th Cir. Oct.28, 1993)), it should be considered. *Id*. (" an ALJ may reject the subjective complaints of a claimant suffering from somatoform disorder, so long as 'the ALJ explicitly considers the somatoform disorder and makes express findings regarding why the claimant's testimony is not credible.'") (quoting *Rodewald v. Astrue*, 2009 WL 1026286 at *22 (D.Minn. Apr.16, 2009)).  Accordingly, on remand, the ALJ should consider plaintiff's somatoform disorder in connection with any credibility determination.

## IV.   CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that defendant's motion for judgment on the pleadings is **DENIED**; and it is further

**ORDERED** that plaintiff's motion for judgment on the pleadings is **GRANTED**; and it is further

**ORDERED** that this matter is **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum-Decision and Order; and it is further

**ORDERED** that pursuant to Local Rule 72.3, the parties are advised that the referral to a Magistrate Judge has been **RESCINDED**, as such, any appeal taken from this Order will be to the Court of Appeals for the Second Circuit; and it is further

**ORDERED** that the Clerk of the Court enter judgment for plaintiff and close this case.

**IT IS SO ORDERED.**

Dated: August 24, 2010
      Syracuse, New York

_____
Norman A. Mordue
Chief United States District Court Judge